STEPHEN L. TINGLEY

*v.*

INTERNATIONAL DYNELECTRON COMPANY et al.

[Decided September 25th, 1908.]

1. Where an original chattel mortgage on the property in controversy, containing no defect in the paper itself or its execution, but only in its proof for record, was destroyed, and a new mortgage executed and accepted by the mortgagee, without objection, subsequent to a sale of the property by the mortgagor and a remortgage thereof by the purchaser, such original mortgage could not be resuscitated and enforced as a prior lien on the property against such purchaser and its mortgagee without proof that the latter sale and mortgage was voluntary or taken with notice of the existence of the first mortgage.

2. Where a chattel mortgage given to P. did not describe him as a trustee, and the consideration was obtained through a sale of the mortgagor's notes, secured by the mortgage, and was in fact furnished by B., an affidavit attached to the mortgage in which P. verified that he was the trustee and beneficiary in the mortgage, and that the consideration was $5,000 paid to the mortgagor, could only be construed to

mean that the consideration was paid by P. himself, either personally or as trustee, and was therefore false.

3. Where a mortgagee's affidavit attached to a chattel mortgage on personal property was false, the landlord's claim for rent of the building in which the property was located was entitled to priority of payment from the proceeds of the sale of the property, though the mortgage was made prior to the accrual of the claim for rent.

Heard on bill, answers, replication and proofs.

*Mr. Frank Bradner,* for the complainant.

*Mr. George M. Titus,* for the defendant Crosselmire.

*Mr. Elwood C. Harris,* for the defendant Purcel, trustee.

*Mr. Herbert Boggs,* for the defendant Electron company

EMERY, V. C.

The complainant, Tingley, as assignee of a chattel mortgage given by a company called the International Dynelectron Company, of Washington, District of Columbia, to one Kenyon, his assignor, seeks to establish this mortgage as a lien prior to a sale of the chattels made by the mortgagor to another company, the Dynelectron Company, of Arizona, and also as prior to a mortgage subsequently given by the vendee to the defendant Purcel, as trustee for five note holders, also made defendants. The bill also asserted priority over a claim of defendant Crosselmire for rent due from the vendee, the Dynelectron Company, but at the hearing this claim of priority was abandoned by complainant. Pending the suit, the mortgaged chattels have been sold by a receiver and the proceeds of sale deposited in court, and the present dispute is on the disposition of the money. In the bill the claim of priority is based on an agreement alleged to have been made by the International company with Kenyon on November 2d, 1905, for the advance by him to the company of $3,500, to be secured by a chattel mortgage on the goods in question, and it is also alleged that as part of the agreement, the chattel mortgage to be given was also to secure the advances

already made and thereafter to be made to the company by the
directors, of whom Kenyon was one. It is further alleged that on
November 8th, 1905, the board authorized the execution of the
chattel mortgage by the president on behalf of the company, and
that Kenyon advanced the $3,500, and the other directors made
other advances, but that for some reasons unknown to complain-
ant, the mortgage was not actually executed until May 9th,
1906, at which time the total advances by Kenyon and the other
directors is alleged to have been $23,560.28. The sale of the
chattels to the Arizona company took place in April, 1906, prior
to the execution of its mortgage to Purcel on May 7th, 1906.
The latter mortgage was recorded on this date, while complain-
ant's mortgage was not recorded until June 20th, 1906. Com-
plainant's priority, by its bill, is based on an alleged equitable
lien on the chattels, arising by virtue of the agreement to mort-
gage, on the faith of which the advance of $3,500 by Kenyon
was subsequently made, and the charge that the subsequent pur-
·chase and mortgage were with knowledge of this lien. Com-
plainant's own proofs showed, however, that a mortgage and a
note to Kenyon for $3,500 was actually executed by the Interna-
tional company on November 8th, 1905, and that on that day the
note and mortgage were delivered to Kenyon, and the $3,500 paid
by him to the company, at Providence, Rhode Island, the prin-
cipal office of the company.

The mortgage was not recorded, and the only explanation made
is by Tingley, who says that the reason was that it was not prop-
erly proved, and that the register of Essex county, where the
goods were located, refused to record it for that reason. The
time when this attempt to record the mortgage was first made
appears only by a minute of the meeting of the directors of the
company on May 9th, 1906, at which the president of the com-
pany, James H. Reid, reported that there was something wrong
in the form of proof in the mortgage given to the company by
Kenyon on November 8th, 1905, which prevented its being re-
corded. The minute further shows that the attorney of the com-
pany was authorized to correct the mortgage and make the nec-
essary additions, and that having done so, the mortgage was pre-
sented to the board, who authorized the president (Reid) and

the secretary (Tingley, the complainant), to execute the mortgage and deliver it to Kenyon. This correction made and thus authorized was not in fact the correction of the mere proof of the mortgage, but was the actual execution of a new mortgage, and as appears by Tingley's evidence, part of the first mortgage was used and the balance of the mortgage rewritten, and the mortgage executed as a new paper. And on the proof it is this new mortgage delivered to Kenyon and recorded, actually executed, and afterwards assigned to Tingley, which is sought to be enforced. The case made by the bill was one to declare effective against the purchaser and those claiming under it, a mortgage executed subsequent to the transfer of chattels, but pursuant to an agreement made before the transfer and of which the purchaser had notice. The case on the proofs shows that a mortgage was actually executed and delivered at the time agreed on and before the sale, passing the legal as well as equitable title to the goods, and that this mortgage, subsequent to the sale and apparently for no defect in the paper itself or in its execution, but only in its proof for record, was destroyed and a new mortgage executed and accepted by the mortgagee apparently without objection. And this destruction of the old mortgage and execution of the new mortgage in its place was not only made without the inducement or even knowledge of the purchaser, but with the knowledge of the complainant, who, as secretary of the company, was present and participated. On the proofs, therefore, a mortgage to secure the $3,500 was actually executed and delivered to Kenyon, according to the agreement, duly passing in form the legal as well as equitable title to the goods, and this mortgage, after the transfer to the Arizona company and its mortgage to Purcel, was destroyed without any participation or knowledge on their part.

It is clear, I think, that the substantial case made by the bill, the enforcement against a purchaser with notice of an equitable agreement existing at the time of the sale, not only has not been made out, but has been disproved, by showing that the agreement sought to be enforced was actually carried out, and that at the time of the sale Kenyon had in his possession the mortgage giving expressly the lien on the chattels, which the com-

plainant seeks to declare to be subject to an implied equitable lien by virtue of the agreement. The maxim *expressum facit cessare tacitum* applies to this agreement for lien to secure a loan, and the substantial equitable question on the proofs is whether, as against the purchaser and its mortgagee, the new mortgage by the International company after the sale being the only mortgage now relied on by complainant, can be established as a prior lien. The acceptance of the new security in place of the original one by Kenyon was voluntary on his part, and confirmed by his assignee, Tingley, who took part in the substitution, and as it was not in any manner attributable to the defendants, there would seem to be no equitable basis for re-establishing the mortgage of November, 1905. Reid, the president of the International company, who executed the new mortgage, had previously executed the bill of sale on behalf of this company to the Arizona company, and knew of its claim to the property included in the new mortgage. It appears by Tingley's evidence that the destruction of the old mortgage and the execution of the new one was made with the advice of counsel, but whether with or without considering its effect does not appear. No claim of mistake is made either in the bill or at the hearing, and as any mistake either of law or fact which occurred was due to the negligence of the parties themselves, and in no sense attributable to defendants, the right to relief against it, by re-establishing the destroyed mortgage, admits of question. Certainly it cannot be re-established except upon proof that the transfer to the Arizona company and its mortgage to Purcel were either voluntary or taken with notice of the existence of the first mortgage. *2 Pom. Eq. Jur.* §§ *776, 871.* Nor could the mortgage of November 8th, 1905, if it had not been destroyed, have been declared a prior lien in the absence of similar proof of notice of such equitable lien. This notice the complainant has failed to make out upon the proofs. The transfer was made upon a consideration agreed on, which has been fully paid and performed by the purchaser, and it is now impossible to restore the status existing at the time of the purchase. And the purchase was made, as I also find upon the proofs, without notice of the alleged lien. The mortgagee, Purcel, and the note

holders for whom he is trustee, are also *bona fide·* purchasers for full value without notice, and so far as complainant's claim as assignee under the second mortgage to Kenyon is concerned, there is no equity either to declare it a lien or to give complainant any equitable standing under the original mortgage of November, 1905. Before taking the mortgage from the Arizona company, searches of the records were made for chattel mortgages, and none being found, and the money being subsequently advanced under this mortgage to pay debts of the International company assumed by the purchaser on the transfer, the notice of the alleged lien should be clearly proved. Such notice as against Bergstrom, the holder of $1,500 of the notes, is sought to be established by the evidence of Tingley himself and to some extent by Reid, the president of the company. Their testimony on this subject is not only outweighed by the evidence in contradiction, but under the circumstances disclosed in the case should be considered with extreme caution on this point of notice. As against the five other defendants, parties as holders of the notes secured by the mortgage, there is no evidence whatever of notice of any lien at the time of their respective advances of money for the notes.

I will advise a decree that complainant has failed to establish a right to any of the funds in court.

The second question arises on the claim of defendant Crosselmire for rent claimed to be due from the Dynelectron Company to November, 1906, besides the expenses of distress warrants issued for the collection of the same. It was objected that the rent was not payable by the company after July 1st, 1906. But on full examination of the circumstances connected with the retention of the property in the rented premises during litigation against the company in the Tansey litigation, to which the Arizona company was a party, and the orders of the court made respecting the custody and removal of the property, I conclude that rental is fairly chargeable up to the time of the sale of the property under the order of the court, and that, so far as relates to the amount claimed, must be allowed. The rent, however, becoming due after the mortgage given by the Dynelectron company, the question of its priority over that mortgage depends on the valid-

ity of the affidavit to the mortgage which is attacked, as not complying with the statute.

The chattel mortgage, dated April 19th, 1906, is given by the Dynelectron Company, of Arizona, to "Theodore M. Purcel," not describing him, however, as trustee, and conveys the absolute title to the chattels in question, with general warranty of title, and with the following statement:

"This conveyance is made on condition, however, that the said Dynelectron Company is indebted in the sum of five thousand dollars ($5,000) represented by ten notes of five hundred dollars ($500) each, bearing even date herewith and payable on or before six months from date hereof, and bearing interest at the rate of six (6) per cent. per annum, said notes being numbered from one to ten respectively. Now if the said Dynelectron Company shall well and truly pay or cause to be paid said notes, principal and interest, then these presents shall be void," &c.

The affidavit attached to the mortgage is as follows:

."State of New York, County of New York, ss. Theodore M. Purcel, being duly sworn, says he is the trustee and beneficiary in the foregoing mortgage. That the consideration for said mortgage is the sum of five thousand dollars ($5,000) paid to the said Dynelectron Company. (Signed) Theodore M. Purcel." Sworn to, &c.

The mortgage was in fact intended to be given to Purcel as trustee for the holders of the notes referred to in the mortgage, and it was intended that the notes should be given to persons advancing money on them. The ten notes of $500 each were payable "to the order of Theodore M. Purcel or bearer," and were declared to be secured by the chattel mortgage. The firm of Bergstrom & Company, one of whose members was president of the company, had agreed to advance $5,000 to the company on the security of this mortgage, reimbursing themselves from the moneys received on placing the notes. Two thousand dollars was advanced by Bergstrom & Company to the company the day after the mortgage was authorized (April 17th, 1904) and the day before its execution, about $2,000 more within five days of the execution, $550 within a month, and the residue within two months. The persons other than Mr. Bergstrom himself, who

received notes, paid Bergstrom & Company and received the notes from them for their money advanced to purchase them after the recording of the mortgage. Mr. Bergstrom himself received three notes on the execution of the mortgage. On this state of facts relating to the consideration of the mortgage and the actual advance of money thereon, it would seem to be beyond question that the statement of Purcel in the affidavit, "that the consideration for said mortgage is the sum of five thousand dollars paid to the said Dynelectron Company," was not a true statement of the status and consideration of the mortgage at the time of recording it, which is the time when it must be true. In the absence of any statement by Purcel in the mortgage that he was trustee, and in the absence of any statement either in the mortgage or the affidavit, as to how or for whom he was trustee, the affidavit that the consideration of the mortgage was for $5,000 paid to the company, could only be taken to mean, paid by Purcel himself, either personally or as trustee, and manifestly this was not a correct statement of the facts relating to the mortgage. The mortgage was, undoubtedly, an honest mortgage, and, as between the company and the holders of the notes secured by it, the mortgage is valid, but as against the landlord, a creditor of the company, the failure of the affidavit to state truly the substantial facts relating to the consideration as they existed at the time of recording it, the mortgage must be declared invalid. The company itself, which appears and defends this suit, sets up no defence to the mortgage, and after the payment to the defendant Crosselmire of the amount due him for rent, the balance of the money in court should be paid to the holders of the notes, the payments being *pro rata,* if not sufficient to pay in full.